# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

**FRANDY ANDRE,**

      **Petitioner,**

**v.**                    **Case No. 3:21-cv-634-MMH-SJH**

**SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,**

      **Respondents.**

_____

## ORDER

### I. Status

Petitioner Frandy Andre, an inmate of the Florida penal system, initiated this action on June 22, 2021, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] He challenges a 2010 state court (Duval County, Florida) judgment of conviction for three counts of armed robbery. Andre raises two grounds for relief. See id. at 5−8. Respondents have submitted a memorandum opposing the Petition. See Response to Order to Petition for Writ of Habeas Corpus (Response; Doc. 6). They also submitted exhibits. See Response Exs. 1−17. Andre filed a Reply. See Petitioner's

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Response to Respondent's Answer (Reply; Doc. 17). This action is ripe for review.

## II. Relevant Procedural History

On December 29, 2006, the state first charged Andre by Information with three counts of armed robbery. Response Ex. 1 at 2−3. After several amendments, the state filed a Third Amended Information−which added counts and co-defendants−charging Andre with three counts of armed robbery on March 11, 2009. Id. at 8−10. Andre entered a negotiated plea of guilty to all three charges in the Third Amended Information. Response Ex. 5 at 210−11. On May 4, 2010, the trial court sentenced Andre to three concurrent twenty-year minimum mandatory terms of imprisonment, one term as to each count. Response Ex. 2 at 2−9. Andre appealed his judgment and sentences to the First District Court of Appeal ("First DCA"). On August 19, 2010, the First DCA dismissed the appeal. Response Ex. 4 at 2.

Andre filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on January 3, 2011, raising five grounds for relief ("Rule 3.850 motion"). Response Ex. 5 at 5−19. Andre later amended this motion, again raising five grounds for relief. Id. at 20−34. On August 11, 2011, Andre filed an addendum motion for postconviction relief under Rule 3.850 ("addendum Rule 3.850 motion"). Id. at 35−51. In the addendum Rule 3.850 motion he raised six grounds of ineffective assistance of counsel, alleging

2

counsel failed to: (1) file a motion to suppress; (2) properly interview and interrogate a detective; (3) seek sentencing under the Youthful Offender Act; (4) advise defendant that he was eligible for youthful offender sentencing; (5) obtain a presentence investigation report; and (6) communicate a favorable plea offer. Id. The trial court struck ground (6) of the addendum Rule 3.850 motion, granting Andre leave to amend in light of new pleading requirements announced by the Florida Supreme Court. Id. at 52–54. Andre, assisted by counsel, timely filed a fourth amended motion on April 8, 2015, which incorporated the grounds from his addendum Rule 3.850 motion and amended ground (6). Id. at 68–79. The trial court held an evidentiary hearing on Grounds (4) and (6) and, following the hearing, denied relief on all six grounds. Id. at 198–209. On July 2, 2019, the First DCA per curiam affirmed without a written opinion the trial court's denial, and on September 16, 2019, it issued the mandate. Response Ex. 9 at 2–3.

On December 5, 2019, Andre filed a successive motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 ("successive Rule 3.850 motion"), raising one claim of newly discovered evidence. Response Ex. 10 at 5–17. The trial court summarily denied relief on the motion. Id. at 23–25. On February 22, 2021, the First DCA per curiam affirmed without opinion the trial court's denial, and on March 22, 2021, it issued the mandate. Response Ex. 15 at 2–3.

3

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318−19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the
> unexplained decision to the last related state-court
> decision that does provide a relevant rationale. It
> should then presume that the unexplained decision
> adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97−98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for
> claims of state courts' erroneous legal conclusions. As
> explained by the Supreme Court in Williams v. Taylor,
> 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000),
> § 2254(d)(1) consists of two distinct clauses: a
> "contrary to" clause and an "unreasonable application"
> clause. The "contrary to" clause allows for relief only
> "if the state court arrives at a conclusion opposite to
> that reached by [the Supreme] Court on a question of

6

law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

7

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102−03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state

9

procedural rule. See, e.g., Coleman,[2] supra, at 747–748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).
[3] Wainwright v. Sykes, 433 U.S. 72 (1977).
[4] Murray v. Carrier, 477 U.S. 478 (1986).

10

> that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not

11

presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting

<u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases,

allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513

U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective

assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby

prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per

curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person
> challenging a conviction must show that "counsel's
> representation fell below an objective standard of
> reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.
> Ct. 2052. A court considering a claim of ineffective
> assistance must apply a "strong presumption" that
> counsel's representation was within the "wide range"
> of reasonable professional assistance. <u>Id.</u>, at 689, 104
> S. Ct. 2052. The challenger's burden is to show "that
> counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant
> by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
> With respect to prejudice, a challenger must
> demonstrate "a reasonable probability that, but for
> counsel's unprofessional errors, the result of the
> proceeding would have been different. A reasonable
> probability is a probability sufficient to undermine
> confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052.
> It is not enough "to show that the errors had some

> conceivable effect on the outcome of the proceeding."
> Id., at 693, 104 S. Ct. 2052. Counsel's errors must be
> "so serious as to deprive the defendant of a fair trial, a
> trial whose result is reliable." Id., at 687, 104 S. Ct.
> 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the Strickland test

before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part

Strickland test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet the

prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243,

1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed." Strickland, 466 U.S. at

697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is
> a most deferential one." Richter, 562 U.S. at ---, 131 S.
> Ct. at 788. But "[e]stablishing that a state court's
> application of Strickland was unreasonable under §
> 2254(d) is all the more difficult. The standards created
> by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review
> is doubly so." Id. (citations and quotation marks
> omitted). "The question is not whether a federal court
> believes the state court's determination under the
> Strickland standard was incorrect but whether that

13

> determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Andre contends his trial counsel was ineffective for failing to advise him of the Youthful Offender Act.[5] Petition at 5. Andre maintains he was eighteen years old and a first-time felony offender at the

---

[5]     The Florida Youthful Offender Act provides trial courts with alternative ways to sentence young adult offenders under the age of 21. <u>See</u> § 958.04, Fla. Stat. The Act addresses the population of young offenders who age out of the juvenile justice system but whose young age and potential for rehabilitation warrant a special effort to provide alternative penalties. <u>See</u> § 958.021, Fla. Stat.

time of the underlying offense which made him eligible for youthful offender

sentencing. Id.

Andre raised a substantially similar claim in ground four of his

addendum Rule 3.850 Motion. Response Ex. 5 at 44−47. The trial court denied

the claim after holding an evidentiary hearing, stating:

> Under the youthful offender statute in force at the time these robberies were committed, a court could sentence a felony defendant as a youthful offender if, among other things, "such crime was committed before the defendant's 21st birthday." § 958.04(l)(b), Fla. Stat. (2006). Defendant claims he was not told of the availability of a youthful offender sentence.
>
> Based on the testimony presented at the evidentiary hearing, this Court finds counsel was not ineffective for failing to advise Defendant of a youthful offender sentence and that Defendant was not prejudiced by counsel's failure to do so. First, there is significant evidence establishing that the trial judge was a strict sentencing judge who would not have issued a youthful offender sentence in a robbery case involving the possession and discharge of a firearm. In fact, at the evidentiary hearing, the chief division prosecutor at the time, Cyrus Zomorodian, stated he never knew the trial judge to issue a youthful offender sentence in any 10-20-Life case. Previous trial counsel for Defendant, Alphonso Hagans, Jr. ("Mr. Hagans"), also stated the trial judge was an extremely strict sentencing judge who never sentenced defendants to probation and rarely allowed defendants to enter into negotiated plea deals. This testimony is consistent with the sentences imposed on Defendant's co-defendants, who did not discharge firearms during the robbery and cooperated with investigators, but still received ten-year, minimum mandatory prison sentences. Given the trial judge's reputation as a strict sentencing judge who would not have considered a youthful offender sentence in this scenario, this Court concludes that defense counsel not advising Defendant of a youthful offender sentence falls within the pail [sic]

of reasonable attorney conduct required by <u>Strickland</u>. Therefore, counsel was not ineffective.

Additionally, Defendant has not established prejudice. In the instant Motions, Defendant avers that, if counsel had advised him of the possibility of being sentenced as a youthful offender, he would not have entered a negotiated plea and, instead, proceeded to trial. This allegation, however, is contradicted by Defendant's sworn testimony at the postconviction evidentiary hearing. There, Defendant testified that his counsel had advised him that, if he went to trial and lost, he would be sentenced to life in prison. And, as established above, if Defendant had been advised of his youthful offender status, he would have known that the trial judge would have completely disregarded the option of sentencing Defendant as a youthful offender. Based on this, Defendant's calculus as to whether or not to enter a plea would not have changed. Accordingly, because counsel was not ineffective and because Defendant was not prejudiced, this claim is denied.

Response Ex. 5 at 205–06. The First DCA per curiam affirmed without opinion the trial court's denial, and on September 16, 2019, it issued the mandate. Response Ex. 9 at 2–3.

To the extent that the First DCA decided this issue on the merits,[6] the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not

---

[6] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 584 U.S. at 128–30.

based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Andre is therefore not entitled to relief on the basis of this claim.

That said, even if the state court's adjudication of this claim is not entitled to deference, Andre's <u>Strickland</u> claim lacks merit. The Third Amended Information charged Andre with three counts of armed robbery with the use of a firearm. Response Ex. 1 at 9. The charges stem from an early morning home invasion robbery that occurred in Jacksonville on December 5, 2006. Response Ex. 5 at 190. The robbery plot developed when Andre and his co-defendants, some of whom were in a music group together, learned that the victims, who were in another music group, owned valuable recording equipment. Response Exs. 5 at 282; 6 at 76, 156, 169. Andre and his co-defendants−armed with firearms−entered the home by kicking down the door and robbed the victims. Response Ex. 5 at 282−83. During the robbery, multiple shots were fired. <u>Id.</u> at 291, 296. The victims reported the following items as stolen: a wallet, keychain, cash, and electronic equipment, including a mixer, microphone, two sets of headphones, and a voice recorder. <u>Id.</u> at 301. Police did not immediately apprehend those involved in the robbery.

Instead, two days later, law enforcement was investigating this same group of individuals for another robbery. <u>Id.</u> at 239. When apprehending Andre and his co-defendants, police approached their vehicle and observed firearms

in plain view. Id. at 240. After detaining them, law enforcement found the victims' stolen electronic equipment in the trunk of the vehicle. Id. at 239, 258, 305. While in the police car, Andre and a co-defendant engaged in a conversation about the home invasion robbery that police recorded. Response Exs. 5 at 242−43; 6 at 78−79.

During his interview, after at first denying involvement, Andre admitted to participating in the home invasion robbery. Response Ex. 5 at 156−57, 280, 282. Andre stated that he kicked down the door of the home, all four defendants were armed, and that they took electronic equipment from the house before they fled. Id. at 158, 282, 284. Andre further admitted to discharging his firearm in the home. Id. at 283.

Alfonso Hagans represented Andre from February 2007 until May 2009. Response Ex. 6 at 20, 28. The Office of the Public Defender assigned Hagans to the sentencing judge's division, where he represented Andre. Id. at 31. Hagans testified that in his experience there, a defendant had two options: enter a plea of mercy to the trial court or go to trial. Id. at 32, 37. From his recollection, the state made very few offers in this division. Id. at 32. Hagans described the judge in Andre's case as "hard lined," agreeing that he was a "stiff sentencer." Id. at 24, 31. As an example of this judge's practices, Hagans detailed the courtroom at the time, explaining that the judge removed probation from his courtroom. Id. at 24. And he stated you would have a

"snowball chance" of getting probation or a youthful offender sentence within this judge's division. Id. at 36.

As for Andre's case, Hagans adamantly testified that the judge would not consider a youthful offender sentence. Id. Andre admitted to law enforcement that he was a part of the home invasion robbery, had a firearm, and discharged the firearm. Id. at 33, 44. He was also on a recording from the police vehicle admitting to the offense. Id. at 42–43. And Andre failed to appear during his case while out on bond. State v. Andre, No. 16-2006-CF-18703-AXXX-MA, Docs. 234, 239 (Fla. 4th Cir. Ct.).[7] All these circumstances, along with the judge's practices, convinced Hagans a youthful offender sentence was not possible here. Response Ex. 6 at 24, 34. In fact, Hagans testified that he never saw any defendant receive a youthful offender sentence in this judge's division. Id. at 36.

Cyrus Zomorodian was an Assistant State Attorney and  division chief of the sentencing judge's division during the timeframe of Andre's case. Id. at 123. While he did not have direct involvement in Andre's case, he testified about state attorney policies and the judge's practices at that time. Id. at 133. Zomorodian testified that once a 10-20-life was charged in a case, it would be

---

[7] The Court takes judicial notice of Petitioner's state court dockets. See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

extremely rare for those minimum mandatories to be waived by the Office of the State Attorney. Id. at 126. And that state attorneys would not offer youthful offender sentences at that time. Id. at 125. As to the sentencing judge's practices, Zomorodian did not recall the sentencing judge giving a youthful offender sentence during the time he oversaw the judge's division. Id. at 127. He added that if a defendant went to trial on a crime of violence, the judge would sentence to the maximum allowed by law "or very close to it." Id. at 128.

It is evident from the testimony of those attorneys involved with Andre's case and the division to which it was assigned, that this judge had strict sentencing practices in his courtroom. Based on his experience and understanding of these practices, trial counsel knew it was futile to ask the sentencing judge to consider a youthful offender sentence here. Indeed, two co-defendants who were similar ages and who cooperated with the state did not receive youthful offender sentences. Response Ex. 6 at 33, 94. Andre raises a series of arguments in his Reply about his trial counsel's deficiencies and what he believes is the resulting prejudice, but many of these arguments are made with the benefit of hindsight. And hindsight has no place in the Court's analysis of counsel's actions under Strickland. Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential . . . [a] fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight . . . ."). Trial counsel relied on his knowledge and understanding of the judge to navigate Andre's case and the Court finds counsel's actions were not deficient under <u>Strickland</u>. <u>See Lara v. State</u>, 528 So. 2d 984, 985 (Fla. 3d DCA 1988) (finding no ineffective assistance when counsel's judgment was based on reasonable indications as to the trial judge's probable disposition of the case.).

Further, Andre cannot establish prejudice here. In the context of guilty pleas, the prejudice prong focuses on whether "counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). Andre faced a maximum sentence of life in prison. The Court finds no reasonable probability that Andre would have chosen to risk a guilty verdict at trial and an almost definite probability of a life sentence—given the judge who had a reputation for imposing the maximum sentence after trial—in lieu of the plea deal he ultimately accepted.

This is also true in light of the evidence against Andre, including his recorded confession in the back of the police vehicle, that he was located with the vehicle containing the stolen items, the testimony from co-defendants of his involvement, and statements to police during his interview admitting his

involvement. Even if counsel had advised Andre of a youthful offender sentence, the testimony of counsel coupled with circumstances of the case and the state's evidence demonstrates that Andre would not have chosen to forgo the plea offer. Accordingly, relief on the claim in Ground One is due to be denied.

## B. Ground Two

As Ground Two, Andre alleges newly discovered evidence of an unknown plea offer. Petition at 7. Andre states that at a hearing on an unrelated postconviction motion in December 2017, one of his trial attorneys testified that the state offered fifteen years to resolve his case. Id. He alleges that the December 2017 hearing was the first time he heard of this plea offer. Id. Andre further states the trial court never held a hearing on this issue, instead denying this claim based on testimony received during the unrelated hearing. Id.

Andre raised a substantially similar claim as the sole ground in his successive Rule 3.850 motion. Response Ex. 10 at 8–16. The trial court denied the claim:

> In the instant Motion, Defendant asserts a claim for relief based on newly discovered evidence. Specifically, Defendant alleges he did not learn of a favorable plea offer made by the State until it was revealed at the December 6, 2017 evidentiary hearing held on Defendant's post-conviction motions.

The Court notes that Defendant's Motion is untimely because it was filed more than two years after his conviction and sentence became final. Fla. R. Crim. P. 3.850(b); Gust v. State, 535 So. 2d 642, 643 (Fla. 1st DCA 1988). However, Defendant alleges newly discovered evidence, which is an exception to rule 3.850's two-year time limitation. See Fla. R. Crim. P. 3.850(b)(1).

 A plea offer known by counsel but uncommunicated to a defendant can constitute newly discovered evidence upon which postconviction relief may be granted. See Simmons v. State, 99 So. 3d 620, 622 (Fla. 1st DCA 2012); Clark v. State, 236 So. 3d 481, 482 (Fla. 4th DCA 2018). However, in this case, based on the testimony elicited at the December 6, 2017 evidentiary hearing, the Court finds the greater weight of the evidence establishes that a fifteen-year plea was offered to Defendant.

At the evidentiary hearing, Defendant's initial trial counsel, Mary Hickson, testified that the State extended a fifteen-year plea offer to Defendant and that she explained this to Defendant at that time. Counsel testified the offer was made very early in the case, when the charges against Defendant were only armed robbery, before the State amended the information to charge Defendant pursuant to the "10-20-Life" statute, section 775.087, Florida Statutes (2006). Defendant, in contrast, testified counsel never told him about the plea offer. Based on the contradicting testimony between Defendant and Ms. Hickson, this Court finds Ms. Hickson's testimony to be more credible. Blanco v. State, 702 So. 2d 1250, 1252 (Fla. 1997). Accordingly, because the Court finds that counsel informed Defendant of the fifteen-year plea offer, this claim is denied.

Response Ex. 10 at 23−24 (internal record citations omitted). On February 22, 2021, the First DCA per curiam affirmed without opinion the trial court's denial, and on March 22, 2021, it issued the mandate. Response Ex. 15 at 2−3.

⁞    Federal habeas relief is available on grounds of newly discovered evidence only where the evidence bears on the constitutionality of the

petitioner's detention. See Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1353 (11th Cir. 2007). Indeed, the sole purpose of habeas proceedings is "to test the validity or legality of the 'restraint of the petitioner.'" Fast v. Wainwright, 310 F. Supp. 404, 405 (S.D. Fla. 1970), aff'd, 439 F.2d 1162 (5th Cir. 1971). Newly discovered evidence, including what goes to the guilt or innocence of the petitioner, is not enough to require habeas relief. Smith v. Wainwright, 741 F.2d 1248, 1257 (11th Cir. 1984), cert. denied, 470 U.S. 1087 (1985). !

Here, Andre seeks habeas relief, in essence, on the premise that his discovery of a previously unknown plea offer satisfies Florida's newly discovered evidence standard. But he is not entitled to federal review of such a claim. The state court affirmance of the postconviction court's ruling settles that Andre did not meet both prongs of the state's newly discovered evidence standard under Florida law. Moreover, because this newly discovered evidence does not bear on the constitutionality of Andre's incarceration, it does not establish a ground for habeas relief. See id. To the extent that he raises an allegation that the state court failed to hold an evidentiary hearing, again, this issue does not bear on Andre's detention and is not a cognizable claim for habeas relief. Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[I]t is 'beyond debate' that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief.").

Even assuming Andre does raise an exhausted federal habeas claim, the First DCA decided this issue on the merits, and the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. The same judge who presided over the December 2017 hearing, denied the successive Rule 3.850 claim that raised the newly discovered evidence. This judge was able to view the demeanor of the witnesses during the December 2017 hearing. Notably, the state court's credibility determinations are entitled to heightened deference. Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) ("A certain amount of deference is always given to a trial court's credibility determinations. That the case is before us on habeas review heightens that deference.").

After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings.

For these reasons, the claim in Ground Two is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Andre seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should

issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Andre "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335−36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

26

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Andre appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of August 2024.

**MARCIA MORALES HOWARD**
United States District Judge

c:      Frandy Andre # 132793
        Counsel of record

27